# EQUITABLE LIFE ASSURANCE CO. et al., Appellants, *v.* HART, State Treasurer, et al., Respondents.

(No. 4,176.)

(Submitted May 6, 1918.   Decided June 13, 1918.)

[173 Pac. 1062.]

*Taxation—License Fees — Insurance Corporations — Statutes and Statutory Construction — Implied Repeal — Defect in Title—Classification—Discrimination—Double Taxation—Foreign and Domestic Corporations.*

Taxation—License Fees—Insurance Corporations—Statutes.
1.   *Held*, that, the purpose of Chapter 79, Laws of 1917, being the imposition of a license fee of one per cent upon the net income of every corporation in the state for the privilege of doing businss as such, without regard to the character of the business, insurance corporations were intended to be within its purview.

Statutory Construction—Unexpressed Intention—Effect.
2.   A supposed unexpressed intention of the legislature in enacting a statute cannot override the clear import of the language employed by it.

[As to judicial inquiry into motives prompting enactment of legis-
lative ordinance, see note in Ann. Cas. 1912A, 716.]

Taxation—License Fees—Insurance Corporations—Repeal of Statute.
3.   *Held*, that section 4017, Revised Codes, requiring insurance corporations to pay certain license fees before commencing to do business in this state, was not impliedly repealed, nor by the general repealing clause found in Chapter 79, Laws of 1917, imposing a further license fee of one per cent upon their net income.

Same—Double Taxation.
4.   The license fee required of insurance corporations by section 4017 and that exacted by Chapter 79, Laws of 1917, *held* not to constitute double taxation, the impositions, though upon the same persons, not being for the same thing.

Statutes—Repeal by Implication—General and Special Acts.
5.   An Act special in character, followed by one of a general nature, is not to be considered as repealed by implication.

Same—Defective Title—What is not.
6.   A misplaced quotation mark in the title of an Act in referring to a statute to be repealed is not sufficient to render the Act invalid on the ground of a defective title.

License Tax—Occupation—Classification.
7.   Occupation may be made ground for license tax classification, whether as to the amount imposed, or as between subjection to or immunity from taxation.

Same—Insurance Corporations—Discrimination.
8.   Chapter 79, Laws of 1917, *held* not unconstitutional because of alleged discrimination between corporations whose business is and

On the question of validity of license tax on foreign insurance companies, see note in 24 L. R. A. 299.

those whose business is not wholly within this state, such discrimination being necessary to attain reasonable equality of burdens between the two.

Foreign Corporations—Advantages Over Domestic Corporations.
9. Foreign corporations cannot complain that they are not given advantages over those created by authority of this state.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ACTION by the Equitable Life Assurance Society of the United States, a corporation, and others, against H. L. Hart, State Treasurer, and R. G. Poland, State Auditor. Judgment for defendants, and plaintiffs appeal. Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellants, submitted a brief; *Mr. C. B. Nolan* and *Mr. E. C. Day,* of Counsel, argued the cause orally.

While it is true that repeals by implication are not favored, nevertheless where the Acts are irreconcilable and are conflicting and where the later Act revises the whole subject matter covered by former legislation, then a repeal is effected. (*Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *State ex rel. Wynne* v. *Quinn,* 40 Mont. 472, 107 Pac. 506.) Where two statutes are passed by the same legislature, the presumption against repeal is strong; still, where the whole purpose of the prior law is covered by the subsequent Act, the latter will control. (*Proctor* v. *Cascade County,* 20 Mont. 315, 50 Pac. 1017.) A statute passed subsequent to another Act, which is incompatible with its provisions, repeals by implication the parts of the first Act that are inconsistent with it. (*United States* v. *196 Buffalo Robes,* 1 Mont. 489; *State ex rel. Danaher* v. *Miller,* 52 Mont. 562, 160 Pac. 513.)

Double taxation is, at best, odious. There is no proposition better settled than that double taxation is not favored, and unless it is clearly evident that the double tax is intended, courts will so construe laws that such result will be avoided. (*Tennessee* v. *Whitworth,* 117 U. S. 129, 29 L. Ed. 830, 6 Sup. Ct. Rep. 645.) ''The presumption of law  *  *  *  is against

double taxation, and  *  *  *  statutes will be construed to avoid such a result if possible.'' (Gray's Limitations of Taxing Power, 678; Burroughs on Taxation, 178; *People ex rel. New York etc. Ry.* v. *Roberts,* 32 N. Y. App. Div. 113; *People* v. *Home Life Ins. Co.,* 92 N. Y. 328; *Georgia R. & B. Co.* v. *Wright,* 125 Ga. 589, 54 S. E. 52; *First Nat. Bank* v. *Douglas County,* 124 Wis. 15, 4 Ann. Cas. 34, 102 N. W. 315; *Southwestern Telegraph & Telephone Co.* v. *Meerscheidt* (Tex. Civ.), 65 S. W. 381; *City of Chicago* v. *Collins,* 175 Ill. 445, 67 Am. St. Rep. 224, 49 L. R. A. 408, 51 N. E. 907; *Rice County Commrs.* v. *Citizens' Nat. Bank,* 23 Minn. 280; *Gambill* v. *Erdrich Bros.,* 143 Ala. 506, 39 South. 297.) And this court in the case of *Anaconda Copper Min. Co.* v. *Ravalli County,* 52 Mont. 422, 158 Pac. 682, placed the seal of its condemnation upon such a practice, giving expression to the fundamental principle contended for when it said that it was the policy of the law that there should not be double taxation of property.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Respondents, submitted a brief; *Mr. Woody* argued the cause orally.

The title of the Act in question and its provisions clearly indicate that it was the intention of the legislature to impose a license fee, under the last paragraph of section 1 of Article XII of the Constitution, upon all corporations doing business in the state, and for the purpose of determining the amount of such license fees to be paid by such corporations the legislature divided corporations into two classes, placing in the first class all corporations doing business wholly within this state, and in the second class all corporations doing business partly within and partly without this state. That the legislature has the power to so classify corporations for such purpose there can be no question. (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Quong*

*Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; *State* v. *Mc-Kinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095.)

A corporation engaged in the insurance business is possessed of and exercises two franchises or privileges.   One, the primary franchise of the right to exist as a corporation, and to enjoy continued corporate existence, and, two, the secondary franchise of the right to engage in, transact and carry on a particular business.   (Joyce on Franchises, sec. 8.)   A tax or fee imposed in the shape of an annual charge or excise upon the right or privilege to exist as a corporation or to exercise continued corporate existence in the state is not a property tax but is a privilege or license tax.   (Gray's Limitations of Taxing Power, pp. 40, 41, secs. 53–55; Cooley on Taxation, 2d ed., p. 573; *Northwestern Mut. Life Ins. Co.* v. *Lewis & Clarke Co.,* 28 Mont. 484, 98 Am. St. Rep. 572, 57 L. R. A. 97.

The precise question here involved, whether the provisions of section 4017, as amended, and the provisions of Chapter 79, Acts 1917, will result in the payment of a double license for the same privilege, has been before the courts in many cases. (See *State* v. *Berry,* 52 N. J. L. 308, 19 Atl. 665; *Lumberville Delaware Bridge Co.* v. *State Board of Assessors,* 55 N. J. L. 529, 25 L..R. A. 134, 26 Atl. 711; *Troy Fertilizer* v. *State,* 134 Ala. 333, 32 South. 617; *Spira* v. *State,* 146 Ala. 177, 41 South. 465; *Southern Ry. Co.* v. *Greene,* 160 Ala. 396, 49 South. 404; *Cobb* v. *Commissioners of Durham Co.,* 122 N. C. 307, 30 S. E. 338; *Kaiser Land & Fruit Co.* v. *Curry,* 155 Cal. 638, 103 Pac. 341.)   The question presented to the supreme court of Oregon, in the case of *State* v. *Pacific States Tel. & Tel. Co.,* 53 Or. 162, 99 Pac. 427, is almost identical with the one here presented to this court.   There the corporation paid the license fee required to be paid by all corporations, and having refused to pay the license of two per cent on its gross receipts, required by a later Act, the state instituted suit to recover the same.   The court held that the defendant was required to pay both licenses.

The contention that the construction which the state is contending for is inimical to the fourteenth amendment to the

Constitution of the United States is disposed of by the following decisions: *New York* v. *Roberts*, 171 U. S. 658, 43 L. Ed. 323, 19 Sup. Ct. Rep. 58; *Home Ins. Co.* v. *New York*, 134 U. S. 594, 33 L. Ed. 1025, 10 Sup. Ct. Rep. 593; *Horn Silver Min. Co.* v. *New York*, 143 U. S. 305, 36 L. Ed. 164, 12 Sup. Ct. Rep. 403; *Moline Plow Co.* v. *Wilkinson*, 105 Mich. 57, 62 N. W. 1119; *Scottish Union Ins. Co.* v. *Herriott*, 109 Iowa, 606, 77 Am. St. Rep. 548, 80 N. W. 665; *State* v. *Hammond Pack. Co.*, 110 La. 180, 98 Am. St. Rep. 459, 34 South. 368; *Southern Ry. Co.* v. *Greene*, 160 Ala. 396, 49 South. 404; *Clarksdale Ins. Agency* v. *Cole*, 87 Miss. 637, 40 South. 228; *People* v. *Equitable Trust Co.*, 96 N. Y. 387; *Pembina Co.* v. *Pennsylvania*, 125 U. S. 181, 31 L. Ed. 650, 8 Sup. Ct. Rep. 737; *Travelers' Ins. Co.* v. *Fricke*, 94 Wis. 258, 68 N. W. 958.

MR. JUSTICE SANNER delivered the opinion of the court.

The appellants, foreign insurance corporations doing business in this and other states of the Union, have been held by the judgment below for payments in the form of license fees under Code, section 4017 (as amended by Chapter 63, Laws of 1915) and also under Chapter 79, Laws of 1917. This appeal is from that judgment, the appellants contending (A) that Chapter 79, Laws of 1917, does not apply to them or to insurance corporations in their situation; (B) that if it does apply, it repeals section 4017, so that they are not liable to payment under both laws; and (C) that if it does apply and does not repeal section 4017, then it is unconstitutional and void.

(A) Chapter 79, Laws of 1917, provides:

"Section 1. Every corporation except as hereinafter provided * * * and engaged in business in the state of Montana, * * * shall annually pay for the exclusive use and benefit of the state of Montana a license fee for carrying on its business in the state of Montana of one per centum upon the total net income received by such corporation in the preceding fiscal year from all sources within the state of Montana, * * * provided, however, that in the case of a corporation engaged

in interstate commerce the license fee shall be based upon the net earnings of said corporation derived from its intrastate business in the state of Montana only. There shall not be taxed under this title any income received by any [here follow sixteen exceptions, fifteen embracing corporations of a federal or of a mutual, eleemosynary or other nonprofit earning character, and the sixteenth as follows] corporation engaged in the business of brewing or manufacturing malt liquors or distilling, manufacturing or rectifying spirituous liquors which pay a license under the provisions of sections 2770 and 2771 of the Revised Codes.   *   *   *

"Sec. 2.   In the case of a corporation engaged in business wholly within the state of Montana, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—First, all the ordinary and necessary expenses;   *   *   *   second, all losses actually sustained and charged off within the year and not compensated by insurance or otherwise;   *   *   *   third, the amount of interest paid within the year on its indebtedness;   *   *   *   fourth, taxes and license fees paid within the year imposed by authority of the United States or its territories or possessions, or any foreign country, or under the authority of this state or any county, school district or municipality or other taxing subdivision of this state, not including those assessed against local benefits; fifth,   *   *   *   an arbitrary deduction of   *   *   *   $10,000.

"Sec. 3.   In the case of a corporation engaged partly in business within the state of Montana and partly within any other state or territory of the United States or any foreign country, the net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources within the state of Montana, other than the income derived from interstate commerce: First, all the ordinary and necessary expenses;   *   *   *   second, all losses actually sustained within the year;   *   *   *   third, the amount of interest paid within the year on its indebtedness;   *   *   *   fourth, taxes paid

within the year imposed by the state of Montana or by any county, school district or municipality or other taxing subdivision of the state of Montana, not including those assessed against local benefits; fifth, * *. * an *. * * arbitrary deduction of * * * $10,000. * * *

"Sec. 10. That section 2773 of the Revised Codes * * * and sections 2774 and 2777 of the Revised Codes * * * and all Acts and parts of Acts in conflict with this Act are hereby repealed."

It will be observed that nothing in the language or subject [1] matter of this statute justifies the view that insurance corporations are to be excluded from its operation, and that they are not to be seems clearer still from what counsel tell us in the history of the Act. They say: "When the legislative assembly met in January, 1917, the executive department found itself confronted, by reason of the growth of the state, with a necessity for a large expenditure which could not be met by taxation in the method prescribed by the Constitution and statutes relating to taxation of property under the taxing power of the state. The subject was referred to by the governor in his message to the legislature. The legislature, after several plans had been introduced in which it was sought to impose the additional burden of taxation upon certain selected corporations or lines of business, appointed a joint committee composed of three from the senate and five from the house, to devise ways and means for meeting the emergency. This committee selected two attorneys to advise it as to the power of the legislature, *viz.*, Mr. H. G. McIntire by the senate, and Mr. E. C. Day, one of the attorneys on this brief, for the house. Sessions of the committee were held and the subject discussed in all its phases, when the attorneys recommended to the joint committee the adoption of the principle of a license or excise tax as that power of the state and of the United States had been outlined by the supreme court of the United States in the case of *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, Ann. Cas. 1912B, 1312, 55 L. Ed. 389, 31 Sup. Ct. Rep. 342, which involved

the discussion of the corporate franchise tax in the Tariff Act of 1909.   The committee accepted the recommendation, and the Act of 1917 was drafted from the Tariff Act of 1909.''

If this be correct, and a comparison shows that the language of the Tariff Act was followed almost *verbatim,* then the following interpretation placed upon this language in *Flint* v. *Stone Tracy Co., supra,* is very helpful: ''Within the category of indirect taxation, as we shall have further occasion to show, is embraced a tax upon business done in a corporate capacity, which is the subject matter of the tax imposed in the Act under consideration.   *   *   *   In the present case the tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed.   *   *   *   The tax under consideration, as we have construed the statute, may be described as an excise upon the particular privilege of doing business in a corporate capacity, *i. e.,* with the advantages which arise from corporate or *quasi* corporate organization. *   *   *   The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals.   These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade.   The continuity of the business, without interruption by death or dissolution; the transfer of property interests by the disposition of shares of stock; the advantages of business controlled and managed by corporate directors; the general absence of individual liability—these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships.   It is this distinctive privilege which is the subject of taxation, not the mere buying or   *   *   *   handling of

goods which may be the same, whether done by corporations or individuals.''

Thus the conviction obtains that, the purpose of our Chapter 79, Laws of 1917, being the imposition of an excise upon the corporation for the privilege of doing business as such, and without regard to the character of the business, insurance corporations were intended to be within its purview.

Our attention is called to the facts that the corporations excepted from the provisions of the Act in section 1, subsection 16, and those whose ''rate of license was to be changed by the new law as set forth in section 10'' are to be found in the Chapter of the Political Code relating to the classification of licenses. ''The reason for this,'' it is said, ''is that the committee was dealing with the exercise of the licensing power of the state, and the fact that the legislature had exercised such power with reference to insurance companies * * * was overlooked.'' The facts are as stated, and the explanation suggested may be correct; but neither the facts nor the explanation suffice to show a legislative intent to except insurance corporations from the Act. Such an intent could be asserted only on the assumption that the legislature was pursuing a general plan to exclude all corporations subject to license under the Chapter referred to. That this is not true is clear, for, though brewers licensed by section 2770 are excepted, and though the provisions (sections 2773, 2774, 2777) licensing telephone, telegraph, electric light, gas, water and express companies, common carriers and street railways are repealed, the pursuit of other lines of business equally open to corporations and licensed by the same Chapter—such as retail liquor dealers, theater proprietors, imitation butter merchants, tobacconists, venders of implements, contracting builders, maltsters, *etc.* (Rev. Codes, secs. 2758, 2759, 2763, 2766, 2778, 2779)—stands unrelieved by any provision of Chapter 79, Laws of 1917. Again, if the facts referred to could be said to indicate a general plan to except corporations subjected to license under prior laws, the omission from such a plan so obviously within its scope as in-

surance companies, to say nothing of the other occupations just mentioned, would spell a purpose, under the familiar rule *expressio unius,* to omit that case from the operation of the plan. (*Spira* v. *State,* 146 Ala. 177, 41 South. 465.)   As to [2]   the explanation suggested, it is unavailing, because it cannot be verified, because a supposed unexpressed intention cannot override the clear import of the language employed, and because reasons sufficient may have appealed to the legislature to preserve the distinction between bodies corporate with their privileges and bodies not corporate, engaged in insurance and the other occupations above mentioned, while ignoring it in the case of brewers and public utilities.

(B) The proposition that, if Chapter 79, Laws of 1917, ap- [3]   plies to insurance corporations, it repeals section 4017 involves considerations of (a) the general repealing clause contained in the Act first mentioned; (b) the abhorrence of the law for double taxation; and (c) the doctrine of implied repeal.   Section 4017 provides: ''All insurance corporations, associations and societies as hereinbefore specified in the preceding section, before commencing to do business in the state of Montana, shall be required to secure a license, authorizing them to transact business of insurance corporations, associations or societies, and shall pay to the state auditor for such license the following fees: For a license to collect in any one year premiums amounting to the sum of five thousand dollars or less, one hundred and twenty-five dollars.   For a license to collect in any one year premiums over the sum of five thousand dollars, the sum of twenty dollars for each and every one thousand dollars to be so collected.   *   *· *   '' The history of this and cognate statutes up to 1903 will be found reviewed in *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clarke County,* 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982.   From this decision and subsequent legislation it will be gathered that the legislature did not always deem the license fee exacted by section 4017 entirely adequate, for up to 1911, section 4073, Revised Codes, also existed, imposing an additional tax on in-

surance companies based upon the excess of premiums collected over losses paid. By the Act approved March 2, 1911 (12th Sess. Laws, p. 131), Code section 4073 was repealed, leaving the companies for the time being under the sole burden imposed by section 4017; but in the case just cited the essential distinction between the two enactments was clearly pointed out.

(a) In the light of this decision we are enabled to say that section 4017 and Chapter 79, Laws of 1917, are not coterminous, either in language or purpose. The range of the former is over all insurance companies, whether corporate or not, and it is confined to them; the range of the latter is over all corporations save those excepted, without regard to the business pursued, and it does not apply to unincorporated concerns. One is unconditional, requiring no net income, imposing a license to carry on a particular business subject to control by a specific department of the state, and fifty per cent of all licenses collected from fire insurance companies under it must be paid to the treasuries of cities for the benefit of the firemen's disability fund (Laws 1915, Chap. 49); the other is conditional, requires a net income, imposes an excise upon the valuable privilege of doing business as a corporation measured by that income, and its principal purpose is the raising of revenue for the exclusive use of the state. There is therefore no manifest conflict between the two enactments; if they touch at any point, it is not in a way to interfere with the operation of either; hence the general repealing clause cannot be successfully invoked.

(b) This is not a case of double taxation in any proper acceptance of that term. We are ready to concede that an intention to impose double license burdens is not to be presumed, although no provision of the Constitution may inhibit them. This, however, refers to impositions upon the same person for the same thing; and the only warrant for the assertion that such is the effect of Chapter 79, Laws of 1917, in connection with Code section 4017, is in the fact that both are called licenses; and, where the insurance company is a corporation,

both may be exacted. But they are not for the same thing. Reverting again to the Tariff Act of 1909, from which it is said that Chapter 79 was taken, it may be noted that by other federal statutes brewers, rectifiers and dealers in tobacco were required to pay license fees for engaging in those pursuits, yet it never was, nor in the light of *Flint* v. *Stone Tracy Co.* could be, contended that a corporation thus engaged was relieved of either the license or the excise. Are we to suppose that in virtue of Chapter 79, Laws of 1917, the provisions of the Code (sections 2758, 2759, 2763, 2766, 2778, 2779) imposing an occupation license upon retail liquor dealers, theater proprietors, imitation butter merchants, tobacconists, venders of implements, contracting builders, maltsters, *etc.*, are repealed where the agency is corporate and in force where it is not? On what basis of equality could an unincorporated malting concern be required to pay an occupation license while its incorporated rival is exempt? The question is a fair one, because the fact that the corporation may, but need not, be taxed as such is wholly beside the matter of occupation wherein the two are on a level. Indeed, it would be as difficult to show, and would exhibit a strange confusion of ideas to attempt the task, why a corporation taxable as such should be relieved of its occupation charge, as that an unincorporated concern, pursuing a licensed occupation, but not enjoying any of the privileges or immunities of corporate capacity, should pay a corporate excise. The things are separate and distinct; if a concern presents either, it is subject to pay accordingly, and if it presents both, it must pay for both. (See *Northwestern etc. Ins. Co.* v. *Lewis & Clark County, supra.*)

(c) As there is not any conflict or crossing of purposes between the two statutes, the above considerations dispose of the [5] contention for an implied repeal as well as of the suggestion following Sutherland (Statutory Construction, sec. 158) that: "Unless there is plain indication of an intent that the general Act shall repeal the special, the latter will continue to have effect and the general words with which it conflicts will

be restrained and modified accordingly." We may add that if section 4017 be viewed as special in character, while Chapter 79, Laws of 1917, is looked upon as of a general nature—which distinction we do not clearly see—then the rule is that the former is not to be considered as repealed by implication. (36 Cyc. 1087.)

(C) It is argued, however, that if Chapter 79, Laws of 1917, does apply and does not repeal section 4017 then it is invalid, because its title is defective, because it violates the state Constitution (sec. 27, Art. III; sec. 26, Art. V), and because it is inimical to the Fourteenth Amendment to the federal Constitution.

The title is not open to any objection. It is comprehensive [6] and not misleading; it states the purpose of the Act with precision, and the only thing the matter with its reference to the statutes to be repealed is a misplaced quotation mark; this is not enough to bring it within the case of *State* v. *Mitchell*, 17 Mont. 67, 42 Pac. 100, cited to condemn it.

The constitutional objections are twofold, *viz.*, that no basis exists for the distinction whereby insurance corporations are required to pay a double license while other corporations covered by the Act are not, and that the discrimination between corporations engaged in business wholly within this state and those engaged in business partly within and partly without the state is indefensible.

Assuming, for argument's sake, that insurance corporations are required to pay a double license, while other corporations [7] covered by the Act are not, the objection, if valid, would go to the statute making the distinction, which in this instance would be 4017, not Chapter 79, Laws of 1917, and the same complaint would be open to corporations engaged in malting, running a theater, construction, *etc.* The objection, however, is not valid. As between insurance corporations and other corporations covered by the Act, there is no distinction in virtue of the Act; the distinction arises under authority of section 4017, out of the occupation pursued, and occupation has al-

ways furnished ground for license classification, whether as to the amount imposed or as between subjection to and immunity from imposition.   (*State* v. *Hammond Packing Co.*, 45 Mont. 343, 123 Pac. 407.)·

From the portions of sections 2 and 3 of the Act above [8]   quoted, it will be gathered that a distinction is made between corporations whose business is and those whose business is not wholly within this state, in that the former are and the latter are not authorized in ascertaining net income to deduct taxes and license fees imposed by authority of the United States or any foreign country.   At first blush this seems an invidious and baseless discrimination, but upon more careful scrutiny we can see that the discrimination was not only just, but necessary, if anything like an equality of burdens was to be attained.   A corporation whose business is wholly within this state presents a case where the basis of every public demand, state, national or foreign, is here; that business constitutes its only resource available to answer such demands, and a balance struck between that business and those demands in connection with the other deductions allowed is a true measure of its net income.   Essentially different is the situation presented by a corporation of the other class; its business may be partly local, partly interstate, partly within some other state, and it would be very remarkable adjustment of burdens which should shift to the business done within this state, and thus relieve all its other business, the load created by authority without the state and properly chargeable to its interstate business, or, as the case may be, to its business conducted wholly within another state; for such a corporation a true measure of its net income taxable by this state is, as the statute has it, the difference between its business here and the burdens here imposed in connection with the other deductions allowed, leaving to its business elsewhere the burdens imposed by authority elsewhere. This arrangement leaves the two classes upon a substantial equality; any other would give to the corporation whose business is not wholly within this state a considerable advantage.

[9] Foreign corporations, assuming the apparent distinction here involved to be as between them and domestic corporations, which it is not, cannot complain that they are not given advantages over those created by authority of the state. (*Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 54 L. Ed. 536, 17 Ann. Cas. 1247, 30 Sup. Ct. Rep. 287.)

We think the statute is squarely within all the rules touching reasonable classification for the purpose of responding to public charges.

The judgment is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied July 11, 1918.