O'CONNELL, PLAINTIFF, *v.* STATE BOARD OF EQUALIZATION ET AL., DEFENDANTS.

(No. 7,159.)

(Submitted June 3, 1933. Decided July 19, 1933.)

[25 Pac. (2d) 114.]

92

*Mr. E. G. Toomey* and *Mr. Carl McFarland,* for Plaintiff, submitted an original and a reply brief; *Mr. Toomey* argued the cause orally.

94

96

*Mr. Albert J. Galen, Amicus Curiae,* submitted a brief and argued the cause orally.

100

MR. JUSTICE STEWART delivered the opinion of the court.

This is an original proceeding instituted by Brian D. O'Connell, a taxpayer, against the State Board of Equalization, the members thereof, the Attorney General, county attorney of Lewis and Clark county, and the Governor of the state, as officials charged with the enforcement of Chapter 181 of the Laws of the Twenty-Third Legislative Assembly, approved March 16, 1933. The complaint recites the enactment of the law, that defendants are charged with the execution thereof, and that they are about to proceed to put the same into effect, and will do so unless restrained by this court.

Chapter 181 was designed and enacted as an income tax law. In its general provisions it follows closely the context of the federal income tax law and levies upon "every indi-

vidual'' subject thereto a graduated tax measured by net income. The tax base is ascertained after allowing certain enumerated deductions and exemptions from the gross income from all sources.

It is of historical interest to observe that the legislative assembly of the state of Montana at its twenty-second session in 1931 enacted Chapter 190, creating ''The Montana Taxation and Consolidation Commission.'' This commission was charged with the duty of examining the taxation system of the state of Montana and was required to make report and findings to the next succeeding legislative assembly. Such examination was made by the commission and report given to the Governor and the Twenty-Third Legislative Assembly. The report recommended the enactment of an income tax law for the state of Montana, and said: ''Able lawyers disagree as to the authority of this state to impose such a tax without a constitutional amendment, but we believe after careful analysis of our court decisions and the decisions of courts of other states that such an amendment is not necessary and that the practical thing to do is to go ahead on the assumption that our supreme court will follow the weight of judicial opinion when the issue comes before it and hold that such a tax is not prohibited by our Constitution. The 1931 legislative assembly of the state of Idaho proceeded in this manner and at the same time submitted a constitutional amendment to the people, giving the legislature enlarged powers with reference to tax. The court held a constitutional amendment not necessary. (See *Diefendorf* v. *Gallet,* 51 Idaho, 619, 10 Pac. (2d) 307.)''

The Governor in his message to the Twenty-Third Legislative Assembly called attention to the taxation situation in the state, and declared that the income tax proposition had passed the experimental stage, and recommended that a sound and carefully drawn income tax law be enacted. In the course of his discussion of the matter, he said: ''The supreme court of our sister state, Idaho, has held in a recent case that it was within the power of the legislature to enact an income tax law without submitting the question to a vote of the

people, under a Constitution very similar to our own. If, however, in your opinion a constitutional amendment is required in this case, it should be submitted to the present legislative assembly."

In conformity with the Governor's recommendation, Chapter 181, now under consideration, was enacted. In further conformity with his recommendation, the legislature provided for the submission of a constitutional amendment under the terms of Chapter 83 of the Laws 1933. The proposed amendment, by the provisions of the Act of submission, will be voted upon by the people at the general election to be held in November, 1934. If adopted, the new amendment will add to section 1 of Article XII of our Constitution the following provision: "The Legislative Assembly may levy and collect taxes upon incomes of persons, firms and corporations for the purpose of replacing property taxes. These income taxes may be graduated and progressive and shall be distributed to the public schools and to the state government."

Chapter 181 very closely approximates the Idaho Act (Laws Idaho 1931 [Ex. Sess.], Chap. 2) mentioned in the report of the commission and in the message of the Governor. There is one important difference in the two laws. The Idaho Act imposes the tax directly upon corporations by defining the term "person" (sec. 2) as including a corporation, and the term "taxpayer" as meaning any person subject to a tax imposed by the law (sec. 2). The Montana Act levies the tax upon "every individual" subject thereto (sec. 2), and defines the word "taxpayer" as not including corporations (sec. 1). The Idaho Act requires taxpayers to list dividends received from corporations, but authorizes the deduction thereof in the computation of the tax. The Montana Act requires the inclusion of corporate dividends and makes no provision for a corresponding deduction in the computation of the tax. There are some other variations or differences in the two laws, but generally speaking, they are either characteristic of all income tax laws or unimportant, and are not controlling in the matter now before the court.

The plaintiff attacks the law on the ground that it is unconstitutional because in conflict with sections 1, 9 and 17 of Article XII of our state Constitution, which are as follows:

Article XII, section 1: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall *levy a uniform rate of assessment and taxation* * * * of all property. * * * "

Article XII, section 17: "The word *property* as used in this article is hereby declared to include moneys, credits, bonds, stock, franchises and all matters and things (real, personal and mixed) capable of private ownership, but this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed."

Article XII, section 9: "The rate of taxation on real and personal *property* for state purposes * * * shall never exceed two (2) mills on each dollar of valuation, unless the proposition to increase such rate * * * shall have been submitted to the people at the general election. * * * "

The amended complaint filed subsequent to the argument in this case attacks the constitutionality of the law on the ground "that it seeks to impose an income tax upon individuals, firms, and partnerships and not upon corporations or artificial persons exercising the same function and within the same class of persons and businesses or occupations."

The complaint asserts that Chapter 181 assumes to change the system of taxation heretofore and now authorized, established and limited by section 1 of Article XII of the Constitution, and it is argued in support of this contention that for forty years last past and prior to the enactment of the chapter the revenues for state purposes were limited to *ad valorem* taxes and license taxes upon persons and corporations doing business in the state. The Attorney General argues that such an allegation is not correct, in fact or in law, and cites the fact that for at least thirty-six years we have had an inheritance tax law in the state of Montana, and that

Article XII of the Constitution does not assume to create or design any system of taxation.

Before entering upon a discussion of the questions here ▇ involved, it is important to call attention to the fact that our Constitution is not a grant but a limitation of the powers of the legislature. This court has often noted the fundamental distinction between the Constitution of a state and the Constitution of the United States. The following language is most expressive: "A state legislature is not acting under enumerated or granted powers but rather under inherent powers restricted only by the provisions of the sovereign Constitution. In the matter of legislation, the people through the legislature have plenary power, except in so far as inhibited by the Constitution, and the person who denies the authority in any given instance must be able to point out distinctly the particular provision of the Constitution which limits or prohibits the power exercised." (*State ex rel. Sam Toi* v. *French*, 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415; *State* v. *Camp Sing*, 18 Mont. 128, 44 Pac. 516, 56 Am. St. Rep. 551, 32 L. R. A. 635; *Missouri River Power Co.* v. *Steele*, 32 Mont. 433, 80 Pac. 1093; *Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477, 481.)

This court has long indulged every possible presumption in ▇ favor of the constitutionality of a legislative Act. In a *per curiam* opinion in the test case involving the validity of state highway debentures it was said: "At the threshold we bear in mind that every presumption must be indulged in favor of the constitutionality of the Act; every reasonable doubt must be resolved in favor of legislative action." The question for the court's determination is not whether it is possible to condemn but whether it is possible to uphold the Act. When two constructions are possible, one which will result in declaring the statute constitutional and the other unconstitutional, the court without hesitation will pronounce in favor of its constitutionality. (*State ex rel. Diederichs* v. *State Highway Commission*, 89 Mont. 205, 296 Pac. 1033, 1034.)

This court many years ago approved and announced the rule declared by Judge Cooley that "in case of a statute assailed as unconstitutional we stand committed to the rule that no such enactment will be pronounced invalid unless its nullity is made manifest beyond a reasonable doubt." (*State* v. *Camp Sing,* supra; *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, 171 Pac. 755, Ann. Cas. 1918D, 1101; *Hilger* v. *Moore,* supra.)

We have observed that Chapter 181, now under consideration, ▇▇ was copied substantially from the Idaho law. This court long ago announced, and has frequently repeated, the principle that, by the adoption of a statute of another state, the construction theretofore placed thereon by the courts of such state is impliedly approved, provided our own statute is silent as to the manner of construction. (*State ex rel. Rankin* v. *State Board of Examiners,* 59 Mont. 557, 197 Pac. 988; *Territory* v. *Stears,* 2 Mont. 324; *Lindley* v. *Davis,* 6 Mont. 453, 13 Pac. 118; *First National Bank of Butte* v. *Bell etc. Min. Co.,* 8 Mont. 32, 19 Pac. 403; *Price* v. *Lush,* 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467; *Stackpole* v. *Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *Largey* v. *Chapman,* 18 Mont. 563, 46 Pac. 808; *Stadler* v. *First Nat. Bank,* 22 Mont. 190, 56 Pac. 111, 74 Am. St. Rep. 582; *Butte & B. Consol. Min. Co.* v. *Montana Ore Pur. Co.,* 25 Mont. 41, 63 Pac. 825; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136; *Miller* v. *Miller,* 47 Mont. 150, 131 Pac. 23; *Moreland* v. *Monarch Min. etc. Co.,* 55 Mont. 419, 178 Pac. 175; *Brown* v. *Roberts,* 78 Mont. 301, 254 Pac. 419.)

At the time the legislature considered Chapter 181, it had ▇▇▇ before it the official report of the Montana taxation and consolidation commission, as well as the message of the Governor. Particular attention was directed not only to the Idaho statute, but to the case of *Diefendorf* v. *Gallet,* 51 Idaho, 619, 10 Pac. (2d) 307, 314, construing the Idaho Act. It is not often that knowledge of the fact of construction by the court of another state is so obvious as is the case here. The very fact that the Act was considered by the legislature in the

light of the construction placed upon it by the Idaho supreme court is most impressive.

It will be observed that the Idaho court discussed almost every possible objection that could be raised against the law and resolved all of them in favor of the constitutionality of the Act. So far as these considerations are pertinent to this Act, and wherever reasonably possible, they are controlling. Of course, it cannot be said that the construction of the Act in Idaho would necessarily be binding in this state in the face of different constitutional provisions. In this connection the doctrine announced by the United States Supreme Court in the case involving the constitutionality of the federal corporation license tax law is in point. The court there said: "While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the Act, nevertheless the declaration of the law-making power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation. * * * " (*Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 31 Sup. Ct. 342, 346, Ann. Cas. 1912B, 1312, 55 L. Ed. 389.) Here the legislature did not rely alone upon the principle that by adopting the statute from Idaho it adopted the construction thereof, but for the purpose of independently expressing legislative intent it enacted section 31, which reads as follows: "For the purpose of raising revenue, the net income required to be shown on returns under this Act and taken as the basis for determining the tax hereunder shall not be classified or held *or construed to be property*. And all income, except what has been expressly exempted under the provisions of this Act and income not permitted to be taxed under the Constitution of this state or the Constitution or laws of the United States, shall be included and considered in determining the net income of taxpayers within the provision of this Act."

This section is taken literally from the Idaho Act, and was construed and sustained by the supreme court of that state in *Diefendorf* v. *Gallet*, supra. We do not hesitate to say that the legislative declaration has some persuasive effect, and rightly so. Our Code, section 10520, Revised Codes 1921, and the declaration of this court leave no doubt on the subject. "In the construction of statutes, the intention of the legislature is to be pursued, if possible" (*Cottonwood Coal Co.* v. *Junod*, 73 Mont. 392, 226 Pac. 1080), and "when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general that is inconsistent with it." (Sec. 10520, supra; see, also, *Joplin Supply Co.* v. *West*, 149 Mo. App. 78, 130 S. W. 156; Lewis' Sutherland on Statutory Construction, sec. 368.) Of course, a fundamental fact or constitutional principle cannot be changed or altered or established by legislative construction. This court has often announced that principle, and did so recently in a case involving the declaration of the legislature to the effect that a private business, the gasoline business, could not be made a public utility by legislative edict. (*H. Earl Clack Co.* v. *Public Service Com.*, 94 Mont. 488, 22 Pac. (2d) 1056.)

While the inheritance tax law may not create a case exactly in point in all particulars, it is important to observe that this court in the early case of *Gelsthorpe* v. *Furnell*, 20 Mont. 299, 51 Pac. 267, 271, 39 L. R. A. 170, considered some of the very constitutional questions here involved and made the following pertinent declaration: "The inherent power of the state gives it the right to lay the tax. * * * The statute is but an exercise and declaration of that power." Speaking through Mr. Justice Hunt, the court quoted with approval from *In re McPherson*, 104 N. Y. 306, 10 N. E. 685, 58 Am. Rep. 502, where it was said: "In announcing the doctrine of the constitutionality of such a tax, and of the power of the legislature over the subject of taxation, Judge Earl, speaking for the court in the case just cited, said: 'We entertain no doubt that such a tax can be constitutionally imposed. The power of

the legislature over the subject of taxation, except as limited by constitutional restrictions, is unbounded. It is for that body, in the exercise of its discretion, to select the objects of taxation. It may impose all the taxes upon lands, or all upon personal property, or all upon houses or upon incomes. It may raise revenue by capitation taxes, by special taxes upon carriages, horses, servants, dogs, franchises, and upon every species of property, and upon all kinds of business and trades.' '' This language used by our own supreme court was applied to the then recently enacted inheritance tax law, but it will be observed that the declaration of the New York court so cited with approval was broader in its application than the mere subject under consideration. Specific mention was made of incomes. And thus it may be said that the learned judge, undoubtedly familiar with our constitutional provisions, had in mind even at that early day that an income tax would not be unconstitutional in the state of Montana.

The first question to be decided is involved in the provisions of sections 1 and 17 of the Constitution, supra. As we have observed, section 1 provides for the levy of a uniform rate of assessment and taxation of all property, and section 17 defines "property." It is contended that because of these constitutional provisions, income is property and therefore subject to all of the constitutional restrictions involved in the assessment of property.

The section of the Idaho Constitution (Art. VII, sec. 3) under consideration in *Diefendorf* v. *Gallet*, supra, provides "the word 'property' as herein used shall be defined and classified by law." The Idaho court in considering the Income Tax Act said: "This entirely unique section of our Constitution * * * completely differentiates this case from all others which we have examined." That court did proceed, however, to consider the law, and did uphold it on general grounds and aside from the peculiar constitutional provision mentioned.

In this case the definition of the word "property" as contained in section 17 of Article XII of our Constitution would

present a serious question but for the fact that our supreme court has given consideration to that section. In the case of *Hilger* v. *Moore,* supra, Mr. Justice Holloway in a very exhaustive and comprehensive manner attempted to reconcile the different sections on taxation as contained in Article XII. He announced the conclusion that section 17 had no effect in the matter of the classification of property for taxation purposes by the use of the following language: ''The definition of property in section 17 of this same Article was intended as a limitation upon the power of the legislature to extend, by indirection, the exemptions authorized or commanded by section 2. It cannot have any other purpose.''

In view of what has been said, we do not feel disposed, nor do we think that it is necessary, to enter into a lengthy decision as to the character of the tax imposed by the chapter here under consideration. Plaintiff claims that the tax is a property tax, but, as we have observed, he relies largely upon the definition of the word ''property'' as found in section 17 of Article XII, supra, to support that contention. The defendants claim that it is an excise tax. We content ourselves with saying that there are reasons why such a tax might be classed as a property tax, and reasons why it should be classed as an excise tax. Volumes, in fact libraries, have been written in a vain endeavor to accurately classify the income tax. Courts and text-writers have endeavored to argue the world into the belief that the income tax is a property tax. The supreme court of the state of Illinois declared: ''The overwhelming weight of judicial authority holds that it is'' a property tax. (*Bachrach* v. *Nelson,* 349 Ill. 579, 182 N. E. 909, 914.) Other courts are just as emphatic in the claim that it is an excise tax, and the Idaho court after a comprehensive and able discussion of the proposition decided that the Act from which ours is taken did not provide for a property tax, and said: ''A tax upon net income is not a tax upon property. Such a tax is an excise tax. The legislature has power to impose this tax.'' The cases upon this point are collected in *Eliasberg Bros. Mercantile Co.* v. *Grimes,* 204 Ala.

492, 86 So. 56, 11 A. L. R. 300; *Hattiesburg Grocery Co.* v. *Robertson*, 126 Miss. 34, 88 So. 4, 25 A. L. R. 748; *Featherstone* v. *Norman*, 170 Ga. 370, 153 S. E. 58, 70 A. L. R. 449.

Professor Robert C. Brown in closing a very able article in the "Minnesota Law Review" of January, 1933, entitled "The Nature of the Income Tax," after discussing at length the analogies between the income tax and the other forms of taxation, closed his article with this declaration: "All of these analogies are helpful in the solution of the unsettled practical problem as to the application of, and limitations of, income taxes; but it is important to remember that they are merely analogies and useful only as such. The analogy should never be allowed to blind us to the real nature of the income tax or cause us to forget that these practical problems must be solved in the light of that nature. The fundamental nature of the income tax is in short that it is an income tax and nothing else."

It is not necessary for us to declare the exact nature of the income tax under consideration. It is apparent that the legislature of the state of Montana intended to enact an income tax and did not intend that it should be considered as a property tax law. It is also apparent that the legislature, by the adoption of the statute from the state of Idaho, took the statute with the Idaho construction, which was to the effect that it was an excise tax. It is also further apparent that, if the definition of "property" contained in section 17 of Article XII is to be given the effect as expressed by this court in *Hilger* v. *Moore*, supra, then the argument of the plaintiff that the Act imposes a property tax falls to the ground.

It is important to note that, if section 17, supra, does not limit the legislature in the particular under consideration, then the general power of the legislature to enact legislation, as discussed earlier in this opinion, comes into effect, and the legislature, in the absence of the restriction, was just as free in that particular as was the Idaho legislature under its permissive constitutional authority. In that event the legislature was free to enact Chapter 181, and it follows that the

provisions of section 1 and section 17 of Article XII are not prohibitive, because the same degree of uniformity is not required in the case of an excise tax or in the case of an income tax statute that is required in one providing for a levy upon "property." (*Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6; *Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; Id., 223 U. S. 59, 32 Sup. Ct. 192, 56 L. Ed. 350.)

It is likewise apparent that section 9 of Article XII, having to do with the rate of taxation, is not involved under the construction heretofore announced; the rates provided for in Chapter 181 are progressive and graduated. What is said in *Hilger* v. *Moore,* supra, is persuasive here. (See, also, *Diefendorf* v. *Gallet,* supra; *Featherstone* v. *Norman,* 170 Ga. 370, 153 S. E. 58, 70 A. L. R. 449; *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000; 70 A. L. R. 468, and note.)

It is further urged that the Act is unconstitutional in that ██ it contravenes the equal protection of the law clause of the fourteenth amendment of the federal Constitution. It provides for a tax upon the net income of individuals, but exempts corporations from its operation. It is claimed that this exemption renders the tax void under the above clause in that it discriminates against individuals.

The Supreme Court of the United States, in interpreting the equality clause of the fourteenth amendment has said that the amendment was not intended to compel the states to adopt an iron rule of equal taxation (*Branson* v. *Bush,* 251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215), and that inequalities which result, not from hostile discriminations, but occasionally and incidentally in the application of a system that is not arbitrary in its classification are not sufficient to defeat the particular law (*Maxwell* v. *Bugbee,* 250 U. S. 525, 40 Sup. Ct. 2, 63 L. Ed. 1124); further, that the state has a wide range of discretion in exercising its right to select the differences upon which the classification shall be based (*Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 33 Sup. Ct. 833, 57 L. Ed. 1206).

The rule, with its limitations, is well stated in the case of *Franklin* v. *Carter*, (C. C. A.) 51 Fed. (2d) 345, 346, in the following language: "The principles which govern the application of the equal protection clause to the power of taxation by the states are well settled. Such power is essential to the existence of the government of a state. (*State Board of Tax Commrs.* v. *Jackson*, 283 U. S. 527, 51 Sup. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464; *Ohio Oil Co.* v. *Conway*, 281 U. S. 146, 159, 50 Sup. Ct. 310, 74 L. Ed. 775.) Such clause does not compel a state to adopt an iron rule of equal taxation; nor require it to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value; nor prevent it from exercising a broad discretion in the classification of properties, businesses, trades, callings or occupations for the purpose of taxation. (*State Board of Tax Commrs.* v. *Jackson*, supra; *Ohio Oil Co.* v. *Conway*, supra; *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237, 10 Sup. Ct. 533, 33 L. Ed. 892; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, 122, 30 Sup. Ct. 496, 54 L. Ed. 688; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 572, 573, 30 Sup. Ct. 578, 54 L. Ed. 883; *Smith* v. *Cahoon*, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264.) However, there is a point beyond which a state cannot go without violating the equal protection clause. While a state may classify broadly the subjects of taxation, in doing so it must proceed upon a rational basis. It is not at liberty to resort to a classification that is palpably arbitrary. The classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in similar circumstances shall be treated alike.' (*Ohio Oil Co.* v. *Conway*, supra, page 160 of 281 U. S., 50 Sup. Ct. 310; *Royster Guano Co.* v. *Virginia*, 253 U. S. 412, 415, 40 Sup. Ct. 560, 64 L. Ed. 989; *Louisville Gas Co.* v. *Coleman*, 277 U. S. 32, 37, 48 Sup. Ct. 423, 72 L. Ed. 770; *Air-Way Corp.* v. *Day*, 266 U. S. 71, 85, 45 Sup. Ct. 12, 69 L. Ed. 169; *Schlesinger* v. *Wisconsin*, 270 U. S. 230, 240, 46 Sup. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389, 400,

48 Sup. Ct. 553, 72 L. Ed. 927; *Sneed* v. *Shaffer Oil & Ref. Co.,* (C. C. A.) 35 Fed. (2d) 21, 24; *Smith* v. *Cahoon,* supra.)''

The supreme court of this state stated the law relative to the taxing power of the state, as limited by the equal protection of the law clause of the federal Constitution, in the case of *Hilger* v. *Moore,* supra. The conclusions there reached are similar to those stated above; and in two very recent cases the court said: ''Discrimination merely is not inhibited, for it is recognized that there are discriminations which the best interests of society require. * * * Any classification is permissible which has a reasonable relation to some permitted end of government action.'' (*Bank of Miles City* v. *Custer County,* 93 Mont. 291, 19 Pac. (2d) 885, 887; compare *Merchants' Nat. Bank* v. *Dawson County,* 93 Mont. 310, 19 Pac. (2d) 892.)

The sole question in this case, so far as the equal protection clause is concerned, is whether there is any reasonable basis for the separate classification of individuals and corporations for income tax purposes. It has been held that there is a reasonable basis for the exemption of corporations in a net income tax law. (*Franklin* v. *Carter,* supra, where the supreme court of the United States denied the petition for a writ of certiorari, 284 U. S. 664, 52 Sup. Ct. 40, 76 L. Ed. 562; *Conner* v. *State,* 82 N. H. 126, 130 Atl. 357.) These cases proceed upon the theory that a tax laid upon the income of individuals ultimately results in a taxation of the income of corporations, since a major portion of the earnings of corporations are distributed as dividends to individuals. As was said in *Redfield* v. *Fisher,* 135 Or. 180, 292 Pac. 813, 295 Pac. 461, 73 A. L. R. 721, corporations may pile up surpluses by other means than cash dividends. However, under the provisions of Chapter 181, Laws 1933, we are unable to see how any great proportion of the earnings of a corporation could forever escape taxation. Stock dividends are not taxable as such but they become taxable if they are in anywise converted into income. (Chap. 181, sec. 7, subd. 2 (g).) We might note in passing that the Oregon laws under consideration in the *Red-*

*field Case,* supra, in which it was held that a corporate exemption in an income tax law rendered the Act void, contained no such provision. In the absence of proof we cannot concede that any appreciable proportion of corporate earnings will forever escape taxation.

It is urged that the Act discriminates in favor of nonresident owners of corporate stock, and likewise that corporate earnings going to nonresidents are not taxable, and that therefore the reasons given in *Franklin* v. *Carter* and *Conner* v. *State,* supra, for holding the corporate exemptions nondiscriminatory do not apply. This contention is based upon the interpretation placed upon section 7, subdivision 3, of the Act, which reads: "In the case of taxpayers other than residents, gross income includes only the gross income from sources within this state, but shall not include annuities, interest on bank deposits * * * or dividends on stock of corporations; except to the extent that such annuities * * * or stocks shall be a part of income from any business, trade, profession or occupation carried on in this state."

The criticism is that the exception to the exclusion mentioned refers to "stocks" instead of "dividends on stock." There is no merit in this criticism. The criticised clause is ineptly drawn, but its meaning is clear; the antecedent of "such" is the list of exempted classes of income, and consequently the exception refers to dividends on stocks, and not the stocks themselves. Any other interpretation would render this portion of the Act meaningless. The stocks themselves, if taxable, would be taxed as other property is taxed; they would not come within the provisions of the income tax law at all.

It is further urged that the Act must fall because therein is found no provision for determining the names and residences of nonresident stockholders. This contention is answered by section 29 of the Act, which vests the state board with authority "to make such rules and regulations and to require such facts and information to be reported as it may deem necessary to enforce the provisions of this Act."

The supreme court of the United States, in the case of *Lawrence* v. *State Tax Commission*, 286 U. S. 276, 52 Sup. Ct. 556, 558, 76 L. Ed. 1102, sanctioned the efforts of a legislature to avoid double taxation by exempting corporations from taxation under an income tax law. The law there in question evidently taxed the income of residents earned without the state, and exempted corporations from its operation. The court in holding that there was a reasonable basis for the classification said: "Apart from other considerations which may have led to the present legislation as an integral part of the state system of taxation of the income of corporations, one which affords a rational basis for the distinction made, is the fact that the state has adopted generally a policy of avoiding double taxation of the same economic interest in corporate income, by taxing either the income of the corporation or the dividends of its stockholders, but not both. * * * In the case of corporate income and dividends attributable to business done outside the state and received by stockholders of domestic corporations, the stockholders are taxed, and not the corporation. That was held in *Franklin* v. *Carter*, (C. C. A.) 51 Fed. (2d) 345, to be a sufficient ground for upholding a statute of Oklahoma, assailed as denying the equal protection of the laws, which had substantially the same features as the present statute. (See, also, *Conner* v. *State*, 82 N. H. 126, 132, 130 Atl. 357.)" It will be noted that in this case the Supreme Court of the United States distinguished the case of *Quaker City Cab Co.* v. *Pennsylvania*, 277 U. S. 389, 48 Sup. Ct. 553, 72 L. Ed. 927, upon which plaintiff in this case has placed reliance.

It has been urged that the corporate license tax is a counterpart of the income tax on individuals, and that for that reason no discrimination is effected by the Income Tax Act. The corporation license tax is levied upon corporations for the privilege of doing business in the corporate character. The individual, of course, enjoys that privilege as a natural right. (See *Equitable Life Assur. Co.* v. *Hart*, 55 Mont. 76, 173 Pac. 1062.) However, it is within the power of the legislature to

consider the aggregate of all taxes imposed when determining the justice of excluding from a tax a particular group. It was so held in *Louis K. Liggett Co.* v. *Lee,* 288 U. S. 517, 53 Sup. Ct. 481, 486, 77 L. Ed. 929, wherein it was said: "But, in view of the imposition of taxes on the operation of filling stations by other Acts, pursuant to the legislature's power of classification, we cannot declare their exemption from the tax laid by the Chain Store Act offensive to the guaranties of the Fourteenth Amendment."

Thus, in this case, while the corporation license tax is not essentially a counterpart of the income tax, it was within the power of the legislature to bear it in mind in exempting corporations from the operation of the net income tax law. The primary test relates, after all, to the extent of the tax burden imposed, and not to the particular character of the taxes, and, unless the individual can point out clearly that the imposition of an income tax upon him is arbitrary in the light of all of the taxation statutes, he must fail.

There is, however, justification to be found for the exclusion of corporations from the operation of this Act. A corporation is but a group of individuals banded together for the purpose of conducting a business for profit. Whether termed profit, returns from the business, earnings, production or what not, the accretion of capital invested constitutes an "income," which is, in the ordinary course of the business, passed on to the individuals forming the artificial person, as dividends on their stock. When the state imposes an excise or license tax upon all corporations, based upon gross earnings, net earnings, production or volume of business transacted, it is taxing the "income" of the corporation. On the other hand, individual income may be derived from a variety of sources; an individual may enjoy a magnificent "income" without engaging in any sort of business; he may derive his income, in whole or in part, from dividends paid on stock held in corporations. On such income, the corporation license tax, based on earnings, and the tax levied against the income derived from dividends, constitute a double taxation against the

individuals owning corporate stock; if the corporation were included in the income tax law, the taxation would treble. These matters were properly considered by the legislature in determining the policy to be adopted, with which the courts are not concerned.

As the tax is not on property, but in the nature of an excise, the fact that the corporation license tax would not, in all cases, equal the tax on an income of like proportions, is immaterial; nevertheless, in such cases, the difference may be eliminated by the double taxation of the right to engage in the business and of the incomes of the stockholders, who, after all, are the corporation. The discrimination, if any there be, does not render the Act unconstitutional. (*Glasgow* v. *Rowse*, 43 Mo. 479; *Alderman* v. *Wells*, 85 S. C. 507, 67 S. E. 781, 21 Ann. Cas. 193, 27 L. R. A. (n. s.) 864.)

It is argued by the plaintiff that the submission of an income tax amendment to our Constitution (Chap. 83, Laws 1933) evidences the belief that an income tax law could not constitutionally be enacted without a change of the Constitution. The proposal to be submitted to the people is designed to amend section 1 of Article XII, by adding a new section to authorize an income tax as hereinbefore quoted. The procedure involved in the passage of Chapter 181 and in the submission of the proposed constitutional amendment by Chapter 83 of the Laws of 1933, had its inspiration in the Idaho situation. In the opinion upholding the Idaho statute (*Diefendorf* v. *Gallet*, supra), the court considered a similar assignment in the following words: "Suggestion is made that at the same session at which the Income Tax Law was enacted the legislature passed a resolution submitting a constitutional amendment to a vote of the people at the general election of 1932 (see Laws 1931 [Ex. Sess.], p. 63), thereby acknowledging that income is property. The premise does not justify the conclusion. The act of submitting a constitutional amendment has no bearing upon the legal implications surrounding the present income tax law, regardless of whatever opinion the members of the legislature may have had. Nor

may we speculate upon the motives or purposes of the legislature, which is outside of our domain. The present law purports to raise revenues for state purposes only, whereas the proposed amendment authorizes the imposition of a tax on incomes, sales, privileges, and occupations, for state, county, and municipal purposes. It also provides for a limitation upon taxation of incomes, goes much further than does the present income tax law. No precedent has been cited upon the proposition and we know of none.''

We do not believe that the submission of the constitutional amendment in this instance has any real bearing upon the subject, and certainly does not adversely affect the principles involved.

It is not necessary to discuss the other objections asserted against Chapter 181. They all involve questions which have been decided by the federal courts and courts of the various states where income tax laws have been sustained. If the law itself is constitutional these objections are of little importance.

For the reason stated, the injunction is denied.

ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY, Dissenting: If this case were not of so much importance to the people of this state, and if the result reached by the majority, in case the electorate shall not see fit to favor the proposed constitutional amendment, is not likely to lead to increased taxation and consequent disaster, I should be content to dissent without giving my reasons for so doing.

Whatever else may be said respecting the reasons for, and the groundwork of, the bill which became Chapter 181 of the Laws of 1933, it is apparent that its sponsors were doubtful of its validity. Admittedly the Act is based in the main upon the income tax law of the state of Idaho, which met the approval of the supreme court of that state in *Diefendorf* v. *Gallet*, 51 Idaho, 619, 10 Pac. (2d) 307, 309. Upon the

argument, the First Assistant Attorney General, speaking for the defendants, admitted that, if an income is property, the Act cannot be sustained. To obviate that difficulty, he contended, upon the authority of *Diefendorf* v. *Gallet,* supra, a learned and exhaustive opinion, and the authorities collated therein, that income is not property.

As we shall see presently, our Constitution defines the word "property" and does it comprehensively, while the Idaho Constitution does not; section 3 of Article VII of the Idaho Constitution provides: "The word 'property' as herein used shall be defined and classified by law." In the Idaho Act (Laws 1931 [Ex. Sess.], Chap. 2, sec. 78) it is provided that net income "shall not be classified or held or construed to be property," and this, the Idaho court says, was done in response to the constitutional provision above quoted. "The legislature, by section 78, did define and classify net income to the extent indicated. At the outset, therefore, we are met with this legislative declaration enacted under a constitutional delegation of power to define and classify." On this subject, says the court, the Idaho constitutional provision is unique.

In considering the case before us, the first question we encounter is, Can Chapter 181 be sustained under our Constitution as was its prototype in Idaho? At the very threshold we must bear in mind that the provisions of our Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise (Art. III, sec. 29), and we must not forget that "it is a constitution we are expounding." (*McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 407, 4 L. Ed. 579.) We should observe at the outset, too, that the settled determination of the people in framing and adopting the Constitution to restrict the legislature in matters of taxation is an outstanding feature of that fundamental law. The historic tendency of governments constantly to exact more money from the taxpayer pursuant to popular desire in furthering public activities was in the mind of the framers; they knew that the history of the human race tells with startling repetition the story of ships of state going to destruction upon the

rocks of high taxation. The people in adopting the Constitution "intended to and did carefully limit the legislative power as to taxation." (*State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 519, 56 Am. St. Rep. 551, 32 L. R. A. 635.)

While the inquiry necessarily will comprehend Article XII of our Constitution relating to revenue and taxation, it will be convenient first to dispose of the argument that income is not property. Section 17 of Article XII declares that "the word property as used in this article is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership." No more comprehensive definition of property can be devised. This section, said this court in *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clark County,* 28 Mont. 484, 72 Pac. 982, 983, 98 Am. St. Rep. 572, in its definition of that which is made subject to taxation is sufficiently comprehensive to "include all matters and things, visible and invisible, tangible and intangible, corporeal and incorporeal, capable of private ownership."

The idea that income is not property within the contemplation of our own and similar constitutional provisions seems to have had its origin in the concept of Mr. Justice Jackson, in *Waring* v. *Mayor etc. of Savannah,* 60 Ga. 93, wherein it is said, *arguendo,* that "net income, after expenses are paid, becomes property when invested, or if it be money lying in the bank, or locked up at home. * * * The fact is, property is a tree; income is the fruit; labor is a tree; income, the fruit; capital, the tree; income, the fruit. The fruit, if not consumed as fast as it ripens, will germinate from the seed which it encloses, and will produce other trees, and grow into more property; but so long as it is fruit merely, and plucked to eat, and consumed in the eating, it is no tree, and will produce itself no fruit."

Upon this and similar fallacious reasoning a number of respectable courts have declared that income is not property. It would be useless to discuss these authorities; they are collected in the *Diefendorf Case.* Their sophistry is adequately

exposed by the eminent Justice Somerville speaking for the supreme court of Alabama, in *Eliasberg Bros. Merc. Co.* v. *Grimes,* 204 Ala. 492, 86 So. 56, 58, 11 A. L. R. 300: "Money or any other thing of value, acquired as gain or profit from capital or labor, is property; in the aggregate these acquisitions constitute income; and, in accordance with the axiom that the whole includes all of its parts, income includes property and nothing but property, and therefore is itself property. This conclusion is so clear that we cannot regard it as debatable, and we have discussed the question at such length chiefly. out of deference to the learned counsel for the state, who have undertaken to refute it upon reason and upon cited authority. If there is anywhere a lingering doubt about this question it will be instantly dispelled by reading the opinions in *Ludlow etc. Co.* v. *Wollbrinck,* 275 Mo. 339, 205 S. W. 196, 202, and in *State* v. *Pinder,* 30 Del. (7 Boyce) 416, 108 Atl. 43, where it is fully discussed, both upon principle and authority." Speaking of the opinion in *Waring* v. *Mayor etc. of Savannah,* supra, Judge Somerville continues: "With all due respect to the court which approved such reasoning—and we note that Judge Bleckley concurred *dubitante*—we are unable to appreciate its relevancy or its value. Investing, or depositing, or locking up what is received as income, changes not its character, but merely its use; and the notion that a tree is property, while its fruit is not, cannot be sustained upon any principle of logic or common sense." (And see *Redfield* v. *Fisher,* 135 Or. 180, 292 Pac. 813, 295 Pac. 461, 73 A. L. R. 721; *Bachrach* v. *Nelson,* 349 Ill. 579, 182 N. E. 909, 915; *In re Opinion of the Justices,* 220 Mass. 613, 108 N. E. 570, 575.)

Our legislative assembly, following the example of Idaho, attempted to declare in section 31 of the Act that income is not property, but this declaration, in view of the constitutional provision, is a waste of words. Furthermore, legislative declarations of the nature of the tax imposed are not controlling on the courts in the matter of determining the true end of a tax. (*Redfield* v. *Fisher,* supra.)

But it is said that this court held in *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477, 482, that section 17 relates to section 2 of Article XII only. What was said in that opinion on the point was unnecessary and is pure *obiter dictum.* Moreover, it is not the law. Section 2 relates wholly to exemptions, and specifies the property which shall, or may be, exempt. The word "property" as employed in section 17 is clearly applicable to sections 1, 5, 6, 7 and 9 (if not others) of Article XII, as well as to section 2. Section 17 begins: "The word property as used in this article. * * * "

The majority, not content with the Attorney General's concession, takes the ground that an income tax may be imposed upon the theory that such a tax is not within the comprehension of Article XII, and is thus, it would seem, akin to an inheritance tax; this theory apparently blends into the argument of the Attorney General, who says an income tax, like an inheritance tax, is not a tax on property.

Income taxes were well known when the Constitutional Convention was in session, and to say that its members were unaware of them is to impeach the knowledge of the many erudite men who composed the convention. Now let us see what they did. Section 1 of Article XII of the Constitution provides: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state."

As early as 1896 this court in a learned and carefully worded opinion considered the purpose and intention of this article, which, said the court, provides two systems of raising money: (1) The taxation system; and (2) the license system. (*State* v. *Camp Sing,* supra.) That this was not an idle but a studied and well-founded assertion is borne out by the debates in the convention which the three justices participating

in the decision consulted. They were contemporaries of the men who wrote the Constitution, and Chief Justice Pemberton and Justice Hunt were members of the Constitutional Convention of 1884. As Mr. Justice Holloway said in *Hilger* v. *Moore*, supra: "When the Constitution of 1889 was written, many of the provisions of the proposed 1884 Constitution were copied verbatim, but in preparing section 1, Article XII, the old draft was abandoned and for it was substituted the section in the language quoted above. Many [five] of the members of the first convention were also members of the second. The same member who presided over the committee which framed Article XII of the first proposed Constitution was likewise chairman of the committee which drafted Article XII of our present Constitution.''

Section 1 of Article XII of the 1884 Constitution read: "The legislative assembly shall provide such revenue as may be needful by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislative assembly may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state.'' The next section provided: "The specification of the object and subject of taxation shall not deprive the legislative assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed by this Constitution.'' But the 1889 convention cast out section 2, excluding its provisions altogether. Can one ask for stronger proof of the intention of the framers to confine the power of the legislature within the two systems described in the *Camp Sing Case?* To refute this, a sentence from *Hilger* v. *Moore,* supra, is seized upon, wherein Mr. Justice Holloway said that Article XII "does not assume to create or define any system of assessment or taxation,'' but this had reference to an argument that section 1 was intended to deal with state taxes exclusively, and section 11 with local taxes exclusively. Following the excerpt quoted

above, the opinion says: "Elminate it [Article XII] altogether from the Constitution, and the legislature could do everything it can now do, *and other things besides* [italics mine], and it was for the express purpose of limiting the lawmakers in legislating upon either of these subjects, that Article XII was inserted. (*State* v. *Camp Sing* [supra], 18 Mont. 128, 44 Pac. 516, 56 Am. St. Rep. 551, 32 L. R. A. 635.) Its limitations are not always expressed in the negative form—thou shalt not—but they are present nevertheless."

As was said in *Sun River S. & L. Co.* v. *Montana T. & S. Bank,* 81 Mont. 222, 262 Pac. 1039, 1047: "In considering the meaning and intent of the language of an opinion one must have constantly in mind the facts of the case in which the opinion is written. For, as Chief Justice Marshall observed, it is impossible to so use language as that general expressions apply in every instance with the same meaning to every condition of facts." The fidelity with which the court followed the doctrine of the *Camp Sing Case* in *Hilger* v. *Moore* is especially noteworthy, and this court has never departed from it until now. (See *Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6, 8.)

It is argued that by analogy the income tax law may be sustained upon the doctrine underlying the inheritance tax law, but the distinction here is very wide. An inheritance tax is not a tax imposed upon property, " 'but upon the privilege of acquiring property by inheritance.' (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170; *In re Tuohy's Estate,* 35 Mont. 431, 90 Pac. 170.) It is a tax upon the transfer, transaction or right to receive property, as the supreme court of Wisconsin said in *State* v. *Bullen,* 143 Wis. 512, 128 N. W. 109. (*Matter of Penfold's Estate,* 216 N. Y. 163, Ann. Cas. 1916A, 783, 110 N. E. 497; *State of Colorado* v. *Harbeck,* 232 N. Y. 71, 133 N. E. 357; *Chaffin* v. *Johnson,* 200 Iowa, 89, 204 N. W. 424; *Walker* v. *People,* 64 Colo. 143, 171 Pac. 747, 8 A. L. R. 855.)'" (*State ex rel. Walker* v. *Jones,* 80 Mont. 574, 261 Pac. 356, 358, 60 A. L. R. 551.) No one has an inalienable right to receive property by inheritance. It is a

right granted to an heir by the sovereign people, a right which the people may withhold. "The privilege is itself not a natural right, but a creature of law." (*In re Tuohy's Estate,* supra.) "To regulate by taxation or otherwise the privilege or right to receive property, is not in conflict with the first section of the bill of rights, which recognizes the inalienable right of acquiring, possessing, and protecting property." (*State ex rel. Schwartz* v. *Ferris,* 53 Ohio St. 314, 41 N. E. 579, 580, 30 L. R. A. 218; *Gelsthorpe* v. *Furnell,* supra.)

Here let us place our feet upon the solid ground. Section 3 of Article III of our state Constitution declares that "All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing, and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways." People may be required to pay taxes for the support of the government which secures to them these inalienable rights. But there can be no tax upon a man's right to live and earn his bread by the sweat of his brow.

Even if it were regarded as an excise tax, the law is that the individual's right to live and own property is a natural right, for the enjoyment of which an excise tax cannot be imposed. "The mere right to hold and own such property cannot be made the subject of an excise." (*In re Opinion of the Justices,* supra.) The power to levy an excise tax "does not extend to the imposition of a charge upon the exercise of a common right." (*In re Opinion of the Justices,* 82 N. H. 561, 138 Atl. 284, 286.)

But the idea that an income tax is an excise under our Constitution is a fantasy. "Taxes are generally classified as either taxes on property or excise taxes, although sometimes the word 'excise' is not used, but instead 'license,' 'privilege,' 'occupation,' or the like. (Cooley on Taxation, 4th ed., sec. 1670.)" (*Hale* v. *County Treasurer,* supra.)

"Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the

support of the government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." (26 R. C. L. 34.)

An excise tax is contemplated by Article XII but only "upon persons and upon corporations doing business in the state" (sec. 1). The language is exclusive. It does not include one who merely receives an income from property, or one who receives a "salary" as an employee, or a blacksmith, carpenter, or electric worker who receives "wages," day's pay; such persons are not "doing business."

Section 11 of Article XII provides: "Taxes shall be levied and collected by general laws for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Chapter 181 contravenes this provision; it commands the levy of a higher rate of assessment and taxation upon property in the same class; it undertakes to impose a levy of 1 per cent. on the first $2,000, 2 per cent. on the second $2,000, 3 per cent. on the third $2,000, and 4 per cent. on amounts over $6,000. In other words, it is a graduated tax. Thus the burdens are made to bear at unequal and arbitrary rates, a scheme which this court has heretofore denounced in *Hauser* v. *Miller*, 37 Mont. 22, 94 Pac. 197. As was said in *Bachrach* v. *Nelson*, supra: "It is a proposed tax on property by graduation rather than by valuation. Whether this law would be desirable from an economic standpoint or as a matter of public policy is something of which this court can take no cognizance, as we are clothed with the power and primarily entrusted with the duty of maintaining the fundamental law of the Constitution, which in its present form confers no legislative authority for the enactment of the proposed graduated Income Tax Act."

Again, if the Income Tax Act is designed as a tax upon property, which it is, whether so designed or not, or, speaking

accurately, against the person upon the basis of his ownership of property (*Hilger* v. *Moore,* supra; *Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100), it is void as a levy in excess of the limit provided in section 9 of Article XII which prohibits a levy at a rate of taxation on property for state purposes in excess of two mills on each dollar of valuation without the submission of the proposition to the people at a general election. It does not require any argument to show that, where property is already taxed at the rate of a mill and a half, a taxpayer with sufficient property and income inevitably will be obliged to pay at a greater rate than two mills on each dollar of valuation. In another view, double taxation may result, for, if a person saves a portion of his net income, which portion he possesses at noon on the first Monday of March, he will be obliged to pay the income tax and also an *ad valorem* tax thereon.

That the operation of Chapter 181 will increase taxes during the present biennium cannot be denied. While it is said in section 28 of Chapter 181 that the revenue produced from income taxes shall be taken account of by the state legislature in making the annual levy for state purposes, such revenue can only affect succeeding biennia. The legislature has levied a tax of one and one-half mills for state purposes, which must be paid throughout the present biennium regardless of whether money is received from income taxes. In the long view, this is not especially important. What is important is the idea of replacing *ad valorem* taxes by income taxes, which found favor with the last legislature, but may not be approved by some future legislature desirous of raising more money. If the legislature has the right under the Constitution as it now exists to levy an income tax, it may employ that tax to raise large sums of money in addition to the *ad valorem* taxes provided by the Constitution. This will not be possible if the constitutional amendment, which is to be submitted to the people at the next election, is carried, for the amendment provides that the legislative assembly may levy "and collect taxes upon incomes of persons, firms and corporations for the pur-

pose of replacing property taxes." (Laws 1933, Chap. 83, sec. 2.)

Admitting that income taxes are desirable, that, as different writers say, the income tax system is a long step in advance, which in the interest of good government should be taken, and that it is the only practical system to reach intangibles which to a large extent are and have been escaping taxation, and is generally conceded by economists and tax experts to be the most equitable and just of all kinds of taxes, the question to be decided by us is whether that system is permissible under the Constitution, or whether it will be necessary to amend it in order that the system may be employed. My answer is: The Constitution must be amended to warrant a valid income tax law.

If it be conceded that additional revenue is needed, nevertheless I say, as was said in the *Camp Sing Case:* "In the matter before us it is better that we suffer all the inconveniences of a present loss of revenue than that we let go of the Constitution for the sake of relief from temporary distresses."

Mr. Justice Angstman's opinion holding the law void as discriminatory appears to have merit, but in the light of what precedes I do not feel called upon to pass upon that issue.

MR. JUSTICE ANGSTMAN, Dissenting: In my opinion Chapter 181, Laws of 1933, cannot stand because it is unreasonably discriminatory. It denies to persons within the jurisdiction of the state the equal protection of the laws contrary to section 1 of the fourteenth amendment to the United States Constitution. In defining a taxpayer under the Act, it expressly excludes corporations. A corporation is not subject to the tax. The supreme court of the United States has held that the equal protection clause of the federal Constitution prohibits a tax upon corporations that is not also imposed upon individuals and partnerships engaged in the same business. (*Quaker City Cab Co.* v. *Commonwealth of Pennsylvania,* 277 U. S. 389, 48 Sup. Ct. 553, 72 L. Ed. 927.)

Mr. Justice Brandeis, in a powerful dissenting opinion concurred in by Mr. Justice Holmes and Mr. Justice Stone, thought that it was proper to impose a heavier tax upon corporations than upon individuals or partnerships because of the advantages enjoyed by corporations over individuals and partnerships. These advantages were pointed out in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 31 Sup. Ct. 342, 353, Ann. Cas. 1912B, 1312, 55 L. Ed. 389, as follows: "The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships." These advantages were adverted to in *Equitable Life Assur. Co.* v. *Hart*, 55 Mont. 76, 173 Pac. 1062, 1065.

The supreme court of Washington has also held that a tax on the net income of corporations without a like tax on individuals is a denial to the corporations of the equal protection of the laws. (*Aberdeen Savings & Loan Assn.* v. *Chase*, 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232.)

Conversely, a tax on individuals from which corporations are exempt denies to the individuals the equal protection of the laws. In *Equitable Life Assur. Co.* v. *Hart*, supra, this court, speaking through Mr. Justice Sanner, propounded this pertinent inquiry: "On what basis of equality could an unincorporated malting concern be required to pay an occupation license while its incorporated rival is exempt?"

I know of no reason why an individual may be taxed while corporations engaged in the same competitive business are exempt. There are cases holding that an income tax on individuals may be upheld though corporations are exempt, on the theory that the corporation income is taxed when it passes as dividends to individuals subject to the tax, and that the scheme thus avoids double taxation. (*Franklin* v. *Carter*, (C. C. A.) 51 Fed. (2d) 345, and *Lawrence* v. *State Tax Com-*

*mission,* 286 U. S. 276, 52 Sup. Ct. 556, 76 L. Ed. 1102.) The case of *Franklin* v. *Carter* was based upon the New Hampshire case of *Conner* v. *State,* 82 N. H. 126, 130 Atl. 357. The *Lawrence Case* is also based on the *Conner Case* and the *Franklin Case.* It may fairly be said that both decisions rest upon the *Conner Case.* If under our statute the corporate income were taxed as dividends to the individuals, these cases would have application. It is a matter of common knowledge that a corporation does not distribute all its net income to the stockholders as dividends. It may be retained by the corporation to build up its surplus. It may be used to enlarge its ·plant and extend its operations. As much as is so used is not taxable, while an individual engaged in a competitive business must pay on the net income though it is used to enlarge his plant or extend his operations. (Sec. 9, subd. 2, Chap. 181; and compare *Redfield* v. *Fisher,* 135 Or. 180, 292 Pac. 813, 295 Pac. 461, 73 A. L. R. 721.)

Also the *Conner Case,* which is the foundation for the holding in the *Franklin* and *Lawrence Cases,* has been held by the supreme court of New Hampshire in the later case of *In re Opinion of the Justices,* 84 N. H. 557, 149 Atl. 321, 328, to have no application under a proposed statute such as Chapter 181. After making reference to the *Conner Case,* the court in the later case said: "The proposed law presents a different situation. It provides for the taxation of certain income earned in the course of transacting business, and that permanent improvements and betterments made to increase the value of the estate of the taxpayer are not to be deducted from gross income. The inequality of not taxing corporations is more marked here than under the present law [being the law involved in the *Conner Case*]. Improvements and betterments upon the corporate estate, or a surplus held in the treasury, would not be passed on to stockholders, and they would thus escape taxation if the business were incorporated, whereas they would be taxable in the case of an individual owner. For this reason it seems to us that it is not permissible to exclude corporations from the category of those subject to a tax upon

business income. Any inequality by reason of double taxation of income can be, and should be, avoided by exempting the dividends paid by such corporations, in so far as they are paid out of income which is taxed in this state. There will then be neither double taxation nor failure to tax. Such a provision would obviate the defect in the present income tax law, under which dividends, received by local corporations and by them in turn paid out as dividends to nonresident stockholders, go tax free.''

The Act under consideration here expressly provides that no deductions shall be made in computing the net income of an individual for ''any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.'' (Sec. 9, subd. 2, supra.) This case falls squarely within the rule of the later New Hampshire case, and calls for a different conclusion than that announced in the *Franklin, Lawrence* or *Conner Cases.*

Also Chapter 181 cannot be sustained on the theory that the corporate income is taxed when it passes to individual stockholders. It is a well-known fact that many, if not most, of the shares of stock of corporations doing business in this state are owned by nonresidents, within the definition of nonresidents contained in the Act. Also many are owned by other corporations. The Act provides that ''the word 'resident' applies only to natural persons and includes for the purpose of determining liability to the tax imposed by this Act with reference to the income of any taxable year, any person domiciled in the state of Montana, and any other person who maintains a permanent place of abode within the state, and spends in the aggregate more than seven months of the taxable year within the state.'' All others are, of course, nonresidents within the meaning of the Act.

The Act, in imposing the tax on others than residents, provides: ''In the case of taxpayers other than residents, gross income includes only the gross income from sources within this state, but shall not include annuities, interest on bank deposits, interest on bonds, notes or other interest-bearing

obligations, or dividends on stock of corporations; except to the extent that such annuities, bank deposits, bonds, notes or other obligations or stocks shall be a part of income from any business, trade, profession or occupation carried on in this state.'' Thus it will be seen from the Act that a nonresident may have a bank deposit in Montana from which he draws interest, and this income in the way of interest is not taxed unless it can be shown that the deposit itself ''shall be a part of income from any business, trade, profession or occupation carried on in this state.'' And so with dividends from stock of corporations. Unless the stocks shall themselves be a part of income from a Montana business, trade, profession or occupation, the dividends received thereon by one other than a resident as defined in the Act are nontaxable.

Also the Act makes no provision for determining the names and residences of nonresident stockholders of corporations, foreign or domestic, doing business in Montana, and hence there is no possible means of collecting a tax on nonresident stockholders receiving dividends of a corporation doing business in this state if the same were taxable under the Act. The only means of enforcing the tax against an unwilling person subject to it is by levy and sale of his property found in this state. (Sec. 26.) The shares of stock of nonresident stockholders of a corporation doing business in Montana have their situs at the residence of the owner. The nonresident stockholders generally own no property in Montana, and hence if their names and residences may be ascertained there is no way of enforcing the tax against them if under the Act it can be said they are at all liable. Hence the practical working of our statute is to favor corporations, for they are themselves exempt from the tax and nonresident stockholders are in effect exempt from the tax on dividends received from corporations doing business in this state.

Finally it is sought to sustain the Act against the charge of discrimination on the ground that corporations are subjected to a license tax not imposed on individuals. This contention might have some merit if the license tax imposed a burden

on corporations substantially as great as this Act imposes on individuals. But the license tax on corporations is 2 per cent. on their net income. (Chap. 166, Laws of 1933.) In determining their net income, the interest on bonds, notes or other interest-bearing obligations of nonresidents is not included. (Sec. 2296, Revised Codes 1921, as amended by Chap. 166, Laws of 1933; Opinions of Attorney General, vol. 11, p. 109.) In determining the income of a resident individual, interest on all interest-bearing obligations is included regardless of the residence of the person or corporation paying the interest.

And, as to the individual income tax, the rate after the first $4,000 of taxable income is 3 per cent. up to $6,000, when the rate on everything above that amount is 4 per cent. Thus except for the deduction of $1,000 to an unmarried person, $2,000 to the head of a family, and $300 for each dependent (aside from husband and wife), the tax on an individual receiving an income in excess of $6,000 is double that of a corporation. In the case of a man without wife or children receiving a net income of $10,000, his tax under the Act would be $240, while that of a corporation with the same net income from the same business transacted in competition with the individual would be $200. And if of that income $5,000 consisted of interest on bonds or obligations of a nonresident, the individual would still be subject to the tax of $240, while the corporation would be subject to a tax of only $100. And if an unmarried individual had a total net income of $100,000, his tax would be $3,840, while a corporation with the same net income from exactly the same business would pay but $2,000; and if of the total net income $50,000 represented interest on obligations of nonresidents, the individual's tax would still be $3,840, while that of the corporation would be but $1,000. The discrimination is palpable.

I concede that if there is any just ground for such discrimination the legislative policy should control us. (*Lawrence* v. *State Tax Commission*, supra.) But I am unable to conceive of any reasonable basis for such classification. Just why the legislature should discriminate against individual citizens of

the state as against corporations, or why it should place a burden upon one who spends seven months and one day of the taxable year in Montana and relieves another engaged in exactly the same business but who spends only six months and twenty-five days in the state is beyond my comprehension. In my opinion the Act must fall as unreasonably discriminatory. The discrimination produced by. Chapter 181 is as glaring and unjustifiable as that produced by the statute condemned by this court in *State* v. *Sunburst Refining Co.,* 73 Mont. 68, 235 Pac. 428. Since in my view of the case Chapter 181 must fall because it is in conflict with the federal Constitution, no useful purpose would be subserved in discussing the question whether it violates our own state Constitution.

Whether under our present Constitution an income tax may be enacted by the legislature is an interesting and difficult question. It will be time to discuss that question when an Act otherwise valid is enacted. If the proposed constitutional amendment receives the favorable consideration of the electorate, the perplexing question now pressed upon us whether an income tax is permissible under the present Constitution can never arise.

In my opinion, the injunction should issue as prayed for.

Rehearing denied September 30, 1933.